## Pell vs. Ulmar.

Where, after the commencement of proceedings for the sale of premises under a loan office mortgage, the term of office of one of the commitsioners of loans expires, and no successor is appointed and qualified, the remaining commissioner has no power to proceed alone, and sell the premises.

A sale by a single commissioner, under such circumstances, being unauthorized by the statute, is null and void and cannot divest any right.

If a successor to the commissioner whose term expires is appointed, but he omits to file his bond within the requisite time, and thus in effect refuses to act, the old commissioner holds over, and is bound to act; and his associate has not the powers of sole commissioner.

Where powers are conferred upon a number, to act collectively, and especially in matters involving any discretion, it is an indication that the association, if not the concurrence, of all *is* essential.

The mortgagor's right of possession, in case of a loan office mortgage, is not determinable upon his mere default in making payment. The proceedings specified in the statute are requisite, to divest such right, and if those proceedings are not conducted in a legal manner, the mortgagor can defend his possession, as against a purchaser claiming under the mortgage sale.

APPEAL by the defendant, from a judgment entered upon the verdict of a jury. The action was brought to recover the possession of a lot of land situate in Williamsburgh; and judgment was entered for the plaintiff that he recover possession of the premises described in the complaint. Richard A. Cooke being seised of the premises mentioned in the complaint, on the 29th July, 1837, with his wife executed a mortgage thereon to the loan commissioners for the county of Kings, for $1200. Subsequently, about the 7th of May, 1838, Cooke and wife conveyed the premises to James Pell, the plaintiff, subject to the said mortgage, which the plaintiff assumed and agreed to pay, with the interest. The interest on said mortgage remaining unpaid on the first Tuesday of October, 1842, and for twenty-three days thereafter, the commissioners met, and on the 26th of October, (4th Wednesday,) 1842, declared the mortgage foreclosed in consequence of the non-payment of interest due on the first Tuesday of that month. They directed notice of sale to be published and posted in pursuance of the statute, which was done accordingly. Immediately after the publication of such notice, and in Nov. 1842, the term of office of Bernardus J. Ry-

der, one of such loan commissioners, expired by efflux of time, and he thereupon ceased to act, and refused to act, as such commissioner. John A. Emmons was appointed as commissioner in the place of Ryder, but never filed his bond, or qualified, or entered upon the duties of said office, and no one since appointed has qualified. Theodore Eames, the other commissioner, who had been the associate of Ryder, being after the expiration of Ryder's term, and his refusing to act, the sole commissioner for the county of Kings, proceeded to perform the several acts in reference to said mortgage and mortgaged premises, which the statute requires to be done. On the first Tuesday of February, 1843, he exposed the mortgaged premises for sale, and there being no bids by any person for it, it was passed, and stood over to the third Tuesday of September. Soon after his so exposing the premises for sale, he proceeded to take possession of the mortgaged premises, pursuant to the requirements of the statute, and afterwards, on the first day of August, 1843, caused the second and due notice to be given and posted, &c.; and on the third Tuesday of September, 1843, after due notice and posting, &c., proceeded to expose the premises at public sale, and no person bidding the amount at which the premises had been appraised, the property was bid in by the commissioner, for the people of the state. The state afterwards, by patent, granted the premises to Josiah Blackwell, through whom the defendant claims by regular chain of title.

*Young & Ruthven,* for the appellant. I. After the expiration of the term of office of Bernardus J. Ryder, and his thereupon ceasing and declining to act, Theodore Eames being sole commissioner for the county of Kings, his acts done as such commissioner were valid and effectual as if such acts had been done by two commissioners jointly, in pursuance of the act. (1.) After the expiration of Mr. Ryder's term, and his ceasing and declining to act, there was a vacancy in the office of one of the loan commissioners for Kings county. (*See* 1 *R. S. 3d ed. p.* 100; *also p.* 121, § 12; *p.* 125, § 36. *Sess. Laws of* 1837, *p.* 121, §§ 13, 14, 23, 30. *The People* v. *Van Horne,* 18 *Wend.*

515, 518. ' *Tappan* v. *Gray*, 9 *Paige*, 510, 11, *&c.*) (2.) When there is a vacancy in the office of the commissioners, the remaining sole commissioner is entitled to act alone, when necessary to prevent a failure of justice. ' (*Downing* v. *Rugar*, 21 *Wend.* 178, 182, *and cases there cited.* *Roseboom* v. *Mosher*, 2 *Denio*, 61. *Meakings* v. *Cromwell*, 2 *Sandf.* *S. C. Rep.* 512, 516. *S. C.* 1 *Selden*, 136.) (3.) Upon a fair construction of section 23 of the act of 1837, (*Sess. Laws of* 1837, *p.* 121,) in case of a vacancy existing in the office of one of the loan commissioners at the time prescribed in the statute for the sale of the land, the remaining commissioner may act alone in the performance of those acts which the statute requires to be done at such time, as well as in the mere execution of the deed to the purchaser. (*Compare* § 23 *with* §§ 32 *and* 33.) (4.) The act to confirm the official acts of the commissioner for loaning certain moneys of the United States, of the county of Kings, passed May 12, 1846, is applicable to the official acts of Theodore Eames, in reference to the premises in question; performed by him as such commissioner, after the expiration of the term of office of his associate commissioner, and before a successor to such associate had been duly qualified. And that said acts of Mr. Eames were thereby confirmed, and are to be held to be of the same force, effect and validity, as if such acts had been performed or transacted by two commissioners jointly. (*Sess. Laws of* 1846, *p.* 251. *Butler* v. *Palmer*, 1 *Hill*, 324, 328, 330, 335; *Johnson* v. *Burrell*, 2 *id.* 238. *Morse* v. *Goold*, 1 *Kernan*, 281, 285, *&c.* *Walter* v. *Bacon*, 8 *Mass. R.* 468. See *Dash* v. *Van Kleeck*, 7 *John.* 477.) (5.) But were it to be held that a valid sale could not be made by one commissioner; even in case of a vacancy, it does not follow that the proceedings of the commissioner in this instance were void. For in this case no sale of the premises was made on the first Tuesday of February; there being no bids, it was passed over until the third Monday of September. In the meantime, possession was taken for the state. The acts of the commissioner in thus passing it over and taking possession were ministerial, and might well be done by one commissioner, especially where, as in this case, there was but one to act.

Pell v. Ulmar.

II. Aside from the mere question of the validity of the acts of Mr. Eames, as sole commissioner, after the first Tuesday of February, 1843, the title and right to possession had passed from the plaintiff. He cannot therefore maintain this action. (1.) After the first Tuesday of February, 1843, and after possession taken by the commissioner, on behalf of the state, the mortgagor was foreclosed, and his right to possession ceased. At most he had only a right to redeem. (*Sess. Laws of* 1837, *p.* 129, §§ 30, 33. *Jackson* v. *Voorhis,* 9 *John.* 129. *Brown* v. *Wilbur,* 8 *Wend.* 657, *and cases there cited.*) The statute of 1837 differs from that of 1808, in this, that it allows the mortgagor to retain possession until the 1st Tuesday of February, after which time the mortgagor is as absolutely foreclosed, both as to title and right to possession, as he was held to be under the former law after default. The words creating the difference between the two statutes are clear and unambiguous, and their effect cannot be extended by construction. (*President, &c.* v. *The People,* 9 *Barb.* 170. *Rue* v. *Alter,* 5 *Denio,* 120.) (2.) The commissioner upon taking possession after the first Tuesday of February, 1843, was seised of the premises as trustee for the state, subject perhaps to a right of the mortgagor to redeem before a valid sale. (*Denning* v. *Smith,* 3 *John. Ch.* 332, 337.) (3.) After default of the mortgagor, in Oct. 1842, and the possession of the premises taken for the state after the first Tuesday of February, 1843, the fee vested in the people of this state, subject to the right of redemption provided in the statute, and subject to the execution of the power of sale conferred by the statute upon the commissioners. (2 *R. S.* 14, §§ 58, 59, 49, *3d ed. Brown* v. *Wilbur,* 8 *Wend.* 659, 661.) The defective execution of the power by the commissioner, (if defective it was,) could not impair the title of the state in the premises. (4.) After possession taken on behalf of the state subsequent to the first Tuesday of February, 1843, the commissioners or those holding under the people of the state are to be considered as mortgagees in possession after default of the mortgagor. The mortgagor, his representatives or assigns, cannot maintain eject-

ment against the mortgagee so in possession. (*Jackson* v. *Mink-ler*, 10 *John.* 480. *Jackson* v. *Bowen*, 7 *Cowen*, 13.)

*John Townshend*, for the respondent. I. The sale was illegal and void, and the entry by Eames was as a trespasser. (*Olmsted* v. *Elder*, 1 *Selden*, 144.) The fact that Ryder's term of office expired before the sale, did not excuse his non-attendance, nor authorize a sale by a single commissioner. (1 *R. S.* 328, § 12, *4th ed.*)

II. The law confirming the acts of Eames cannot operate to divest the property of the respondent. (*Powers* v. *Bergen*, 2 *Selden*, 367.)

III. The mortgage offers no bar to the plaintiff's right to re-cover. The defendant, as the grantee of the land, could not defend his possession by the mortgage lien. (*Jackson* v. *Bron-son*, 19 *John.* 325, *cited and approved in Diokenson* v. *Jackson*, 6 *Cowen*, 149. *McFarland* v. *Wheeler*, 26 *Wend.* 467.) The defendant waved this lien by setting up a claim to the fee. (*Young* v. *Hunter*, 2 *Selden*, 207.) The lien should have been pleaded. (*Code*, § 252. *Brazill* v. *Isham*, 2 *Kernan*, 9. *Far-mers' Loan Co.* v. *Edwards*, 26 *Wend.* 555. *White* v. *Spetti-gue*, 13 *M. & W.* 603. *Dewey* v. *Hoag*, 15 *Barb.* 365. *King* v. *Merch. Ex. Co.*, 1 *Selden*, 557. *Runyan* v. *Mersereau*, 11 *John.* 534, *said to be settled law*, 26 *Wend.* 559. *Barber* v. *Cary*, 1 *Kern.* 397. *Field* v. *Mayor of N. Y.*, 2 *Selden*, 179.)

*By the Court*, S. B. STRONG, J. · I would gladly make a dis-position of this cause favorably to the defendant if I could do so, consistently with the rules of law, for he has acted in good faith, and performed substantially what could be required from him. The fault which vitiates his defense was that of a public officer, in which he had no participation. If, however, he has any rights in the property in question they are of an equitable character, and cannot be enforced or sustained in the present action.

The premises in dispute were mortgaged by R. A. Cooke and his wife to the loan commissioners of the county of Kings,

on the 29th of July, 1837. Default having been made in the payment of the interest, and the same remaining due on the first Tuesday in October, 1842, and for twenty-three days thereafter, the two commissioners, on the 29th day of that month, declared the mortgage foreclosed, and thereupon duly published a notice that such premises would be sold on the first Tuesday of the following February. In the intermediate time the term of office of Mr. Ryder, one of the commissioners, expired, and he thereupon ceased to act in that capacity. A successor was appointed, but he never qualified, and Mr. Eames, the other commissioner, conducted the subsequent proceedings alone; there not having been any other proper associate appointed until they had terminated. Mr. Eames, as commissioner, exposed the premises for sale on the first Tuesday in February, 1843, but there being no bids, the matter stood over until the third Tuesday in the following September. In the intervening time he took possession of the mortgaged premises, and advertised them for sale on the last mentioned day, when he made an attempt to sell them, but no one offering the requisite amount, he bid them in for the state. They were afterwards patented by the state to Blackwell, under whom the defendant claims title. Cooke, the mortgagor, and his wife, conveyed the premises, subject to the incumbrance, to the plaintiff, in May, 1838.

The office of the associate commissioner (Mr. Ryder) had not been absolutely vacated according to the provisions of the revised statutes, when any of the transactions to which I have alluded took place. The specified instances of vacancy are the death of the incumbent, his resignation, his removal from office, his ceasing to be an inhabitant of the state or district, his conviction of an infamous crime, his refusal to take the oath or to file his official bond when one is required, and the decision of a competent tribunal annulling his election or appointment. (1 *R. S.* 122, § 34.) By another provision of the revised statutes, (1 *R. S.* 117, § 9,) any officer (except certain judicial officers) who shall have entered upon the duties of his office is required to continue to discharge such duties, although his term of office shall have expired, until a successor in such office shall

be duly qualified. Although the proposed successor had omit-: ted to file his bond within the requisite time, and in effect refused to act, and there was one of the instances of vacancy specified in the 34th section to which I have alluded, yet that is qualified by the 9th section; and taking the two together, (and, as they were passed at the same time, that is the proper way to consider them) the old officer whose term had expired had not only the right, but was bound, to act. It would seem to follow, and I think it does, that under those circumstances the associate fully in office had not the powers of sole commissioner.

As a general rule, statutes conferring powers upon officers, relative to the divesture of estates, are construed strictly. Titles to our property are so important that they should not be compulsorily destroyed or affected, except by means clearly defined and closely pursued. Where powers are conferred upon a number to act collectively, and especially in matters involving any discretion, it is an indication that the association, if not the concurrence of all is essential.

The two commissioners acted together in October, 1842, and what was then done by them was legal. They then, pursuant to the 30th section of the act of April 4th, 1837, became seised in fee simple of the mortgaged premises to the uses mentioned in that act, but the mortgagor, his heirs and assigns had the right of possession expressly reserved to him or them until the first Tuesday of February thereafter, and to redeem the same as subsequently provided. According to the decision of the court of appeals in *Olmsted* v. *Elder*, (1 *Selden*, 144,) the mortgagor had the right of possession, as against strangers, until the subsequent measures required by the statute to divest such right had been pursued. It was also held in that case that a sale by one commissioner was unauthorized ; that the purchaser, although subsequently receiving a deed from both commissioners, acquired no title; that he could not be deemed an assignee of the mortgage, as the commissioners had no right to assign it ; and that consequently such purchaser was a stranger, and could not protect his possession against the mortgagor. The differ-

Pell *v.* Ulmar.

ence between that case and the present one is, that there the defendant derived title under a deed from the commissioners, and here the defendant has received a patent from the state. But as neither was authorized by law, both must be equally ineffectual.

If the right of possession until the first Tuesday in February, 1843, had been made determinable upon the default of the mortgagor *alone*, in express terms, then as there was such default the title of the state would have become absolute, and the possession of the defendant would have been protected. But the statute does not so declare. It is quite apparent that the subsequent proceedings specified in the statute were requisite to divest the right of possession of the original owner. If the state officers had done nothing subsequent to the publication of the advertisement of sale, in October, 1842, it could not be supposed that the mortgagor's right of possession was gone. What was done by a single commissioner, after that, being unauthorized by the statute, was null and void, and could not divest any right.

The 23d section of the act of April 4, 1837, authorizing one commissioner to execute a deed, where there is a vacancy in the office of commissioner, in cases where a sale had been regularly made, certainly implies that without an express enactment the statutory powers cannot be exercised by one alone, in any emergency.

The statute of May 12, 1846, providing that the acts of the one commissioner after the expiration of the term of office of his associate, and before a successor had been duly qualified, should be of the same force, effect and validity as if they had been performed by two commissioners jointly, could not, and did not, act retrospectively, so as to take away any existing right. We hold our rights of property under a higher power, which cannot be overthrown by the legislature.

The judgment should be affirmed.

[DUTCHESS GENERAL TERM, April 8, 1856. *Brown, S. B. Strong* and *Rockwell*, Justices.]