MARY C. SANFORD & others *vs.* MARY E. SANFORD.

Bristol.    Oct. 25, 1882. — Sept. 6, 1883.    C. ALLEN, COLBURN & HOLMES,
JJ., absent.

A testator gave to his son J. "the improvement" of certain lands, including one
half of the homestead estate (the lower part) and one half of the barn; provid-
ing that "it shall be understood that the improvement of all said property shall
belong to my son during the term of his natural life. The homestead and barn
are to be for his exclusive and personal use, he shall have no right to let or
lease or sell his interest in the homestead ·or barn, but only to occupy the
same;" and further providing that, upon the death of his said son, said prop-
érty, "the improvement of which has been given to him," should go to the tes-
tator's heirs at law in fee; and also gave to his daughter A. one undivided half
of his homestead (the upper part) and one half of the barn and land used by
him in connection with the homestead, "for her personal use, and not to lease
or let." A codicil to his will provided as follows : "The homestead being
given to J. and A., I change the same only by giving the same undivided to
them, but for their personal occupation as set forth in my will." *Held,* that the
will gave to the son only a life estate in the lands devised; and that the codicil
did not enlarge his estate in the homestead, but changed it from a specific to an
undivided half.

A testator gave certain lands, including an undivided half of his homestead estate,
to his son for life, and, after the son's death, to the testator's heirs at law in fee.
The lands were sold during the lifetime of the son for non-payment of taxes,
the undivided half of the homestead estate being conveyed to P., the husband
of one of the heirs. P. conveyed the title so acquired, and the other purchasers
at the tax sale made conveyances, so that this title was acquired by several of
said heirs. They, together with P., conveyed to S. by quitclaim deed all the
right, title and interest which was conveyed to P. by the deeds of the collector
of taxes, in said lands, "meaning hereby to convey no other rights which we
have in said estates than were acquired by said collector's deeds;" and contain-
ing the usual covenant against incumbrances and of warranty. *Held,* on a writ
of entry by said heirs, grantors in the deed, against S., that the deed purported
to convey only such title as was conveyed by the tax deeds to P.; and that the
covenants in said deed were limited to an estate acquired under the tax deeds,
and did not estop the demandants from setting up any other title in themselves,
nor from denying the validity of the tax sale.

A sale of land, under an advertisement of a collector of taxes, which offers for sale
"said parcels of real estate, or such undivided portions of them as may be neces-
sary," is invalid.

WRIT OF ENTRY to recover four parcels of land in Taunton.
The tenant pleaded *nul disseisin* as to one parcel, and disclaimed
as to two parcels; and the demandants discontinued as to the
fourth parcel. Trial in the Superior Court, without a jury,
before *Staples,* J., who allowed a bill of exceptions, in substance
as follows :

The demandants, who were the heirs at law of Alpheus Sanford, and their legal representatives, claimed title to the demanded premises under the will and codicil of said Sanford. By the will, which was duly proved and allowed on April 23, 1873, the testator gave to his son, A. Jones Sanford, "the improvement" of the lands demanded, including one half of the homestead estate (the lower part) and one half of the barn; providing that "it shall be understood that the improvement of all said property shall belong to my son during the term of his natural life. The homestead and barn are to be for his exclusive and personal use, he shall have no right to let or lease or sell his interest in the homestead or barn, but only to occupy the same;" and further providing that, upon the death of his said son, said property, "the improvement of which has been given to him," should go to the testator's heirs at law in fee; and also gave to the testator's daughter, Amelia A. Paull, one undivided half of his homestead (the upper part), and one half of the barn and land used by him in connection with the homestead, "for her personal use, and not to lease or let." The codicil provided as follows: "The homestead being given to Jones and Amelia, I change the same only by giving the same undivided to them, but for their personal occupation as set forth in my will." A. Jones Sanford died in October, 1878.

On April 23, 1873, Jones conveyed by a quitclaim deed his estate in the homestead and other real estate so devised to him to Charles A. Phillips, who on the same day, as a conduit, conveyed it to Jones's wife, the tenant in this action.

On July 6, 1876, the collector of taxes of Taunton sold the several parcels which had been so devised to Jones, for the non-payment of taxes, said undivided half of the homestead estate being sold to Roger Paull, the husband of Amelia A. Paull. The collector's notice stated that he should offer for sale "said parcels of real estate, or such undivided portions of them as may be necessary." On July 8, 1876, Roger Paull conveyed the title so acquired, and the other purchasers at the tax sale made conveyances, so that this title was acquired by the demandants, except Mary C. Sanford. On March 5, 1878, four of the demandants, including Amelia A. Paull with her husband Roger, conveyed to the tenant by quitclaim deed all the right, title

and interest which was conveyed to Roger, by the deeds of the collector of taxes, in said lands, "meaning hereby to convey no other rights which we have in said estates than were acquired by said collector's deeds;" and containing the usual covenant against incumbrances and of warranty.

The tenant contended that the will, taken in connection with the codicil, gave to A. Jones Sanford a fee in an undivided half of the homestead; but the judge ruled that it gave him only a life estate.

The tenant also contended, and asked the judge to rule, that the deed of March 5, 1878, conveyed all the interest of these four demandants in the premises, whether as heirs at law of Alpheus Sanford or otherwise. But the judge ruled that the deed conveyed only such title as was conveyed under the sale for taxes, and that the sale and deed were invalid, and the tenant acquired no title thereby as against the demandants. The tenant alleged exceptions.

*B. W. Potter*, for the tenant.

*J. Brown*, for the demandants.

W. ALLEN, J. The will of Alpheus Sanford gave to A. Jones Sanford but a life estate in the lands in question. The codicil did not enlarge his estate in the homestead, but changed it from a specific to an undivided half.

The deed of the demandants to the tenant purported to convey only such title as was conveyed by the tax deeds to Roger Paull; and the covenants are limited to an estate acquired under those deeds, and do not estop the demandants from setting up any other title in themselves, nor from denying the validity of the tax sale. *Hoxie* v. *Finney*, 16 Gray, 332, and cases cited.

The tax sale was invalid, because it was made upon a notice to sell the lands, or undivided portions of them. *Wall* v. *Wall*, 124 Mass. 65. *Forster* v. *Forster*, 129 Mass. 559.

*Exceptions overruled.*